OPINION
{¶ 1} On September 12, 1997, appellee, the Stark County Department of Jobs and Family Services, filed a complaint alleging Shawn Lambert born July 21, 1991, and Kristen Lambert born October 1, 1994, to be neglected children. Mother of the children is appellant, Debra Lambert. Father is Earl Lambert. By judgment entry filed December 12, 1997, the trial court found the children to be dependent, and granted temporary custody of the children to appellee.
{¶ 2} On March 12, 1998, appellant filed a motion for immediate review seeking a return of her children. A hearing was held on March 26, 1998. By judgment entry filed same date, the trial court returned custody of the children to appellant subject to protective supervision.
{¶ 3} On August 4, 1998, appellee filed a motion for post-dispositional review of the children's placement due to deplorable conditions in the home and the lack of adequate parental supervision. A hearing was held on August 5, 1998. By judgment entry filed August 6, 1998, the trial court placed the children in appellee's temporary custody.
{¶ 4} On August 11, 1998, the trial court granted custody of the children to their father subject to protective supervision. On January 25, 1999, the children were removed from the father's home per his request. Allegedly, Shawn had engaged in inappropriate sexual activity with other children. By judgment entry filed January 26, 1999, the trial court once again granted temporary custody of the children to appellee.
{¶ 5} On January 29, 1999, appellee filed a motion for permanent custody. Said motion was amended to a request for an extension of temporary custody. By judgment entry filed March 12, 1999, the trial court granted the motion.
{¶ 6} On June 29, 1999, appellee filed a motion to return custody of the children to their father and to terminate its involvement. However, concerns arose regarding the inappropriate sexual acting out between the children. Therefore, appellee amended its motion to a request for a Permanent Planned Living Arrangement (hereinafter "PPLA"). A hearing was held on October 27, 1999. By judgment entry filed same date, the trial court granted the request.
{¶ 7} On May 24, 2001, appellant again filed a motion for immediate review seeking a return of her children. A hearing was held on June 18, 2001. By judgment entry filed June 21, 2001, the trial court returned Shawn to appellant's custody subject to protective supervision, and retained Kristen in the PPLA.
{¶ 8} On September 19, 2001, appellee filed a motion for permanent custody of Kristen. A hearing was held on October 31, 2001. By judgment entry filed November 28, 2001, the trial court granted the motion and awarded appellee permanent custody of Kristen. Findings of fact and conclusions of law were filed on same date.
{¶ 9} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 {¶ 10} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 11} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I, II
{¶ 12} Appellant claims the trial court erred in finding that Kristen cannot be returned to her in a reasonable time, and claims the trial court's award of permanent custody to appellee was against the manifest weight and sufficiency of the evidence and was not in Kristen's best interest. We disagree.
{¶ 13} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
{¶ 14} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 15} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 16} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 17} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
{¶ 18} "(10) The parent has abandoned the child.
 {¶ 19} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 20} "(16) Any other factor the court considers relevant."
{¶ 21} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 22} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 23} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
{¶ 24} "(3) The custodial history of the child;
 {¶ 25} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;"
{¶ 26} The crux of appellant's argument is that she should be given another opportunity to have temporary custody of Kristen, with protective supervision. Appellant argues because she is successfully managing Shawn, she should be given the chance to take care of Kristen. Although this is a credible argument, there are specific facts in this case that set it apart from others.
{¶ 27} Gerald Bello, Ph.D., a psychologist who evaluated appellant in 1999, opined appellant could successfully parent Kristen given another year with intensive supervision. T. at 7, 12-16. After this evaluation, appellant was given an opportunity through visitation with Kristen to prove she could supervise both Kristen and Shawn and keep them apart to avoid sexual acting out initiated by Shawn. T. at 36-39, 55-56. Two caseworkers, Merritt Boyce and Sherry Bash, testified the children were not being kept apart like they needed to be and appellant failed to understand the severity of keeping the children apart due to the sexual acting out. T. at 39, 43-44, 55-56, 59. After observing appellant's interaction with the two children, Ms. Boyce opined appellant could not provide safety for Kristen and she "can handle one child" but not both. T. at 43. After one and one-half years of visitations, the situation did not improve. T. at 40. During the visitations, appellant was unable to exert authority over Shawn that is normal in a parent/child relationship. T. at 29.
{¶ 28} Essentially, appellant is asking for another chance. Appellee is charged with the responsibility of providing reasonable time for reunification. Appellee first removed the children from appellant's home in 1997. T. at 70. Appellee has been intensively involved with appellant and the children since 1999 through its "First Unit" program. T. at 35. The commencement of the sexual acting out by Shawn was not done on appellant's watch. T. at 66-67. Despite the seriousness of the sexual acting out incidents, appellant appears to be unable to control Shawn's actions.
{¶ 29} In its findings of fact and conclusions of law, the trial court found the following at paragraph eighteen:
 {¶ 30} "* * * This is all compounded by the fact that Debra has an Intelligence Quotient of 72, which in public school, would call for special class placement. Debra certainly has her own special challenges to deal with, but her ability to supervise and control her children has not improved substantially, despite her attending Parents' Anonymous, and First Unit's involvement. Additionally, due to concerns about Shawn's past history of sexually acting out with Kristian while placed with dad, this missing component of parental supervision is of paramount importance. * * *"
{¶ 31} Upon review, we cannot say the trial court erred in determining appellee had expended a reasonable amount of time and effort on reunification given appellee's involvement with the family over a three years time span and the lack of progress, regardless of appellant's total cooperation with the case plan. See, In the Matter of: MathessChildren, Minor Children (June 3, 1996), Stark App. No. 95 CA 0032.
{¶ 32} As for the issue of best interests, it is undisputed that the counselors and caseworkers involved were unanimous that permanent custody to appellee was in Kristen's best interest. T. at 30, 60. The thrust of appellant's argument is that she deserves another chance, not that Kristen deserves a stable environment.
{¶ 33} The majority of the evidence established that Kristen has bonded to her foster parents, and her relationship with appellant was distant, anxious and difficult to manage. T. at 27-28, 40, 56-58. Kristen has ongoing significant behavioral problems. T. 28, 75. The interaction between appellant and her children was best described by Kristen's therapist, Vicki Boatright, as follows (T. at 30):
 {¶ 34} "In observing the interactions with Debbie with her son Sean, Debbie is at times very overwhelmed in dealing with Sean, also knowing the history with Sean of having sexual acting out behaviors with Kristen, I'd be very concerned with him taking the authoritative role in the family, that he could be — he could further victimize her and with Kristen having cognative (sic) deficits she would not be able to protect herself well with Debbie's problems in managing Sean, I have serious concerns that Debbie would not be able to prevent some kind of victimization from occurring."
{¶ 35} In stark contrast, Kristen has been in foster care half of her life and has bonded to the present foster home. She believes the foster home is her real family. T. at 60, 75-76, 77. The need for permanency and stability was stressed by the professionals. T. at 30-31, 60, 79. Adoption is available for the child. T. at 76.
{¶ 36} We find the evidence to be substantial and credible that it is in the child's best interest to be provided with a safe and stable home environment which can only be available through permanent custody.
{¶ 37} Upon review, we find the trial court did not err in granting appellee permanent custody of Kristen.
{¶ 38} Assignments of Error I and II are denied.
{¶ 39} The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By FARMER, J. GWIN, P.J. and BOGGINS, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.